Janet S. FRANCO, Appellant,

v.

J. D. STREETT & COMPANY, Inc., a Missouri Corporation, Kenneth C. Baker, the Boatmen's National Bank of St. Louis, Rolla Wells Streett, J. Douglas Streett and Lindell Gordon, Jr., Executors Under the Last Will of J. Clark Streett, Deceased, Rolla W. Streett, J. Douglas Streett, Maud Streett Gordon, Marian B. Patton, Individually and as Executrix Under the Will of Harper C. Patton, Deceased, and John R. Patton, Trustee Under the Will of Harper C. Patton, Deceased, Respondents.

No. 48729.

Supreme Court of Missouri.

Division No. 1.

Sept. 10, 1962.

Motion for Rehearing or for Transfer to Court En Banc Denied Oct. 8, 1962.

598

Thomas F. McDonald, Wayne B. Wright, Henry C. Bryan, Jr., Raymond F. McNally, Jr., McDonald, Barnard, Wright & Timm, Anthony F. Vaiana, St. Louis, for appellant.

Kenneth Teasdale, Wm. H. Armstrong, Edwin Johnston, Charles E. Dapron, Armstrong, Teasdale, Roos, Kramer & Vaughan, St. Louis, for other respondents.

Hugo Monnig, Lewis C. Green, St. Louis, for respondents Marian B. Patton, Individ-ually and as Executrix Under Will of Harper C. Patton, Deceased, and John R. Patton, Trustee Under Will of Harper C. Patton, Deceased.

HOLLINGSWORTH, Judge.

This is an action in equity, wherein plaintiff, Janet S. Franco, formerly the owner of 130 shares of 1215 shares of the common stock of J. D. Streett & Company, Incorporated, outstanding from 1943 until February, 1955, seeks to recover her alleged pro rata share of properties and profits allegedly lost to the company by reason of the alleged fraudulent misappropriation by certain of its officials and directors of an alleged corporate opportunity to acquire and thereafter to own and operate for and on behalf of the company certain towboats and barges theretofore owned and operated by Erlbacher Brothers, a towing enterprise located at Cape Girardeau. Trial of the case resulted in a judgment in favor of defendants, from which plaintiff has appealed. The amount in dispute exceeds $15,000 and this court has jurisdiction.

·J. D. Streett & Company, domiciled in the City of St. Louis, herein frequently referred to as the "Oil Company", was a wholesale marketer of petroleum products which it purchased from refiners wherever an advantageous price could be had, then transported, formerly by railroad tank cars and later by river barges, into the central Mississippi River Valley and sold to independent jobbers, farm bureaus and others. The enterprise, which later became known as J. D. Streett & Company, was founded in 1884 and was owned and operated by James D. Streett until his death in 1917. He had two children: defendant J. Clark Streett and Florence Streett Shields, plaintiff's mother. J. Clark Streett had four children: J. Clark Streett, Jr., J. Douglas Streett, Rolla W. Streett and Maud Streett Gordon. (J. Clark Streett, Jr., said to be a resident of Texas, although named a party defendant in this action, was never served with process and never appeared in the case.) Florence Streett

Shields had two children: a daughter, the plaintiff herein, Janet Shields (who married Paul Franco), and a son, George H. Shields, III. Following the death of James D. Streett in 1917, J. Clark Streett and George H. Shields, Jr., (Florence Streett Shields' husband) operated the business on a partnership basis until it was incorporated on December 23, 1919, under the name of J. D. Streett & Company, Incorporated. George H. Shields, Jr., died in 1928.

The defendants in the original petition were J. D. Streett & Company, Inc., J. Clark Streett, Kenneth C. Baker, J. Douglas Streett, J. Clark Streett, Jr., Rolla W. Streett, Maud Streett Gordon, Marian B. Patton, individually and as executrix under the will of Harper C. Patton, deceased, and John R. Patton, trustee under the will of Harper C. Patton, deceased. J. Clark Streett (at trial time an aged and infirm man) died after trial and submission of the case and the executors of his estate were substituted as defendants in his stead.

The petition alleged that from January 1, 1943, to and through February 4, 1955, plaintiff owned 130 shares of 1215 shares of the issued and outstanding common stock of the Oil Company (J. D. Streett & Company, Inc.); that defendants J. Clark Streett, Kenneth C. Baker, Rolla W. Streett, J. Douglas Streett and Harper C. Patton constituted the board of directors of the Oil Company from 1943 through July 7, 1953; that thereafter until the death of Harper C. Patton in October, 1954, said persons constituted five of a total of seven members of the board of directors; that since the death of Harper C. Patton the four survivors of the original five constituted a majority of the board of directors—which varied at different times from five to seven; that at all times material J. Clark Streett was chairman of the board, Kenneth C. Baker was president and general manager and Harper C. Patton (until his death), Rolla W. Streett and J. Douglas Streett were vice-presidents of the company; that from 1929, the date of George

H. Shields' death, until 1955, plaintiff's mother and plaintiff relied on and placed special confidence in J. Clark Streett and his sons, Rolla W. Streett and J. Douglas Streett, to operate the company in the best interest of all of the shareholders, as a result of which plaintiff and her mother gave proxies to J. Clark Streett and signed other instruments at his request without question or independent advice and entrusted him with certificates of stock endorsed in blank, of which reliance and confidence J. Clark Streett and his sons, Rolla W. Streett and J. Douglas Streett, and Kenneth C. Baker and Harper C. Patton had full knowledge; that in January, 1944, and prior thereto the company was dependent upon Erlbacher Brothers Towing Company for the transportation of its products from points on the river to terminals in the St. Louis area, which facilities were vital to the company's business; that prior to August, 1943, defendant Baker and Harper C. Patton received knowledge that the Erlbacher Towing Company was for sale; that in 1943, Baker, Patton, J. Clark Streett, Rolla W. Streett and J. Douglas Streett entered into a conspiracy to take advantage of plaintiff and her mother to deprive the shareholders other than themselves of the opportunity to acquire Erlbacher Brothers' equipment and to operate it for the benefit of the conspirators; that pursuant to the plan of the conspirators a partnership was formed between Baker, Patton and Rolla W. Streett to purchase and operate the Erlbacher equipment under the name of Streett Towing Company for the exclusive transportation of the products sold and distributed by the Oil Company; that in December, 1943, said conspirators, through J. Clark Streett, without advising plaintiff or her mother of the foregoing facts, requested plaintiff to sign, and she signed, a paper wherein she, as a stockholder, agreed to authorize Baker, Patton and Rolla W. Streett, who as partners had formed the Streett Towing Company, to have dealings and contracts with the Oil Company; that thereafter Streett Towing Company purchased a substantial portion

of the Erlbacher equipment, using Oil Company funds to pay the cash down payment; that thereafter the conspirators used assets and facilities of the Oil Company to operate the Towing Company, and charged it unreasonable prices for towing; that in so acting, the conspirators violated their duties as officers, directors and fiduciaries; that in 1946, Streett Towing Company was incorporated, and that Rolla W. Streett, without consideration, divided his one-third stock ownership therein equally with his defendant brothers and sister; that Harper C. Patton died October 7, 1954; that prior to February 4, 1955, Baker, in furtherance of the conspiracy, negotiated the sale of all of the stock of both the Oil Company and the Towing Company to Cities Service Oil Company; and that when plaintiff entered into the contract to sell her stock in the Oil Company to Cities Service she was not aware that the stock of the Towing Company was likewise being sold, nor that the conspirators had any interest therein. Plaintiff then prayed that a constructive trust be impressed upon all of the distributions of profits realized from the Towing Company and the proceeds from the February, 1955, sale of its stock, and that she recover her pro rata (130/1215) share thereof.

Motions to dismiss were filed in behalf of all defendants and were sustained as to all defendants except plaintiff's uncle, J. Clark Streett, and her cousins, Rolla W. Streett and J. Douglas Streett.

The answer of defendants J. Clark Streett, Rolla W. Streett and J. Douglas Streett denied generally and in detail the allegations of wrongdoing as alleged in the petition and set forth certain affirmative matter and defenses, to wit: That during the month of December, 1943, and for some years prior, the Oil Company was represented by the Hon. Guy A. Thompson (senior partner of the law firm of Thompson, Mitchell, Thompson & Young), who was the husband of Florence Streett Shields Thompson and the stepfather of plaintiff; that when Patton, Baker and

Rolla W. Streett first contemplated the formation of Streett Towing Company and the acquisition of the Erlbacher equipment, both the Oil Company and its counsel were immediately advised and consulted; that, as a result thereof, the aforesaid law firm, at the request of the Oil Company and upon the instruction of Guy A. Thompson, prepared a form of agreement for execution by all stockholders of the Oil Company, for the purpose of placing upon record the unanimous consent and authorization of each and every stockholder thereto; that a copy of such instrument was mailed to and signed by each and every stockholder of the Oil Company, including Janet S. Franco and Florence Streett Shields Thompson, on or about December 8, 1943; that had plaintiff not executed the aforesaid instrument, the Oil Company would not have entered into any business dealings with Streett Towing Company, and Baker, Patton and Rolla Streett would not, while officers and directors of the Oil Company, have acquired the Erlbacher equipment and thereafter contracted and dealt with the Oil Company over the years; that subsequent to the December 8, 1943, stockholder consent, there were other occasions when plaintiff was also informed of the formation of the partnership, its subsequent incorporation, the names of the stockholders thereof and the amount of their respective holdings, and the nature and extent of its business relationship and dealings with the Oil Company; that from and after July 7, 1953, George H. Shields, III, brother of plaintiff, served upon the board of directors of the Oil Company, and had and otherwise acquired knowledge of the foregoing matters and things; that in January, 1955, immediately prior to the sale of all of the Oil Company's stock, plaintiff executed a written general power of attorney in favor of the said George H. Shields, III, so as to enable him to act for and in her behalf relative to the negotiation and sale of her shares of stock; that during the time he was so acting, the said George H. Shields, III, had or acquired full knowledge of the terms and provisions of both the contract

for the sale of stock of the Oil Company and the separate contract for the sale of stock of the Towing Company; that plaintiff is charged with the knowledge of her attorney-in-fact; that after February, 1955, plaintiff engaged independent counsel who advised her fully of all matters and things now deemed by her to be material, and that notwithstanding having such knowledge, she accepted during the year 1956 from the purchaser and still retains the then remaining unpaid balance of the purchase price for her 130 shares of Oil Company stock. Defendants further asserted the affirmative defenses of estoppel, laches, unclean hands, waiver and abandonment of claim, and statutes of limitation.

There is little dispute between the parties as to the relationship existing between the Oil Company and the Towing Company, nor the reason why or the manner in which their respective business enterprises became so closely interwoven and mutually profitable. The essentially basic issue is whether by the purchase and operation of Streett Towing Company by Kenneth C. Baker, Harper C. Patton and Rolla W. Streett, all of whom were then officers and directors of the Oil Company, they wrongfully and unlawfully enriched themselves to the detriment of J. D. Streett & Company and, especially, plaintiff Janet Franco, a former stockholder in said company. The evidence submitted upon that issue took a wide range. The transcript consists of more than 850 pages; there are scores of exhibits, many of which comprise tabulations of multitudinous activities and details of the business affairs engaged in by the parties and corporations herein involved throughout a long span of years. We shall narrate material portions thereof as briefly as possible.

At the first meeting of the board of directors, after the incorporation in 1919 of J. D. Streett & Company, J. Clark Streett was elected president and treasurer; George H. Shields, Jr., was elected first vice-president and secretary; Samuel J. T. Hunt was elected second vice-president and

was appointed operating manager; and William Kleissle was elected third vice-president and was appointed superintendent.

During the years of 1919 through 1923, under Hunt's management, the company experienced slow growth in sales and profits. Hunt resigned in 1923. Following his resignation, deficits ensued for several years. The evidence reveals that the business of marketing petroleum products in the manner conducted by J. D. Streett & Company is highly competitive and requires resourceful and experienced management. At the close of 1926, defendant Kenneth C. Baker was named general manager and the company gave him full authority over and placed him in charge of its operations and promised him stock in the company. J. Clark Streett and George H. Shields, Jr., however, retained unto themselves responsibility for financing and general supervision. In 1927, Baker became a director and in 1928 he became second vice-president and secretary. During that year, Baker employed a boyhood friend, in whose ability he had great confidence, Harper C. Patton, to work for the company. From 1928, thence forward, under Baker's management, the company experienced a phenomenal growth; its annual sales increasing from (in round figures) $400,000 in 1928 to $14,000,000 in 1954; its assets from $245,000 to $4,000,000.

Upon the death of George H. Shields, Jr., in 1928, he left surviving him his widow, Florence Streett Shields, his daughter, the plaintiff herein, and his son, George H. Shields, III. When George H. Shields, Jr., died, ownership of all of the then outstanding common stock vested in J. Clark Streett and plaintiff's mother, Florence Streett Shields, in equal portions, to wit: 500 shares each. (Before the death of George H. Shields, Jr., 1000 shares of preferred stock had been authorized and apparently issued. J. Clark Streett and George H. Shields, Jr., each owned half of that stock. Thereafter, 250 more shares of preferred stock were issued. The total of the afore-

said, to wit: 1250 shares, continued to be owned equally, i. e., 625 shares by J. Clark Streett and 625 shares by Florence Streett Shields Thompson, until the sale of the property of J. D. Streett & Company to Cities Service Oil Company.)

Pursuant to the policy of the company, initiated by J. Clark Streett, to make certain that the company would at all times be under the active management of capable officers personally interested in the financial success of the company, he and Florence Streett Shields each transferred out of their respective stock holdings 200 shares of common stock, 300 shares of which were given to Baker and 100 shares of which were given to William Kleissle. In addition to the vesting of these shares of stock in the managerial officers, the board of directors in 1933 adopted the further policy of awarding yearly bonuses from the annual profits of the company to various officials as additional compensation.

In about 1932, Florence Streett Shields disposed of the remaining 300 shares of her common stock by transferring to her daughter plaintiff Janet S. Franco, 100 shares thereof; to her son, George H. Shields, III, 100 shares; and to J. Clark Streett in discharge of a prior oral agreement made by George H. Shields, Jr., with J. Clark Streett, 100 shares.

On October 12, 1933, Florence Streett Shields married Guy A. Thompson, senior partner in the law firm of Thompson, Mitchell, Thompson and Young, which law firm was then and thereafter remained counsel for J. D. Streett & Company until the end of the year 1946.

According to the stock certificate book, which purports to show stock ownership,[1] the number of shares of common stock held by each stockholder in 1932 was as follows: Kenneth C. Baker, 300; Janet S. Franco, 100; William Kleissle, 100;

George H. Shields, III, 100; J. Clark Streett, 100; J. Clark Streett, Jr., 100; J. Douglas Streett, 100; Rolla W. Streett, 100; total 1,000. In 1943, George H. Shields, III, discharged an indebtedness owed by him to J. Clark Streett by transferring to J. Clark Streett the 100 shares of common stock he had received from his mother.

In November, 1937, a thirty percent dividend was declared on the common stock and each shareholder was given a choice of taking either stock or cash. The plaintiff elected to take the thirty shares to which she was entitled under that option, and from that time until sale of the company in 1955 she owned 130 of 1215 shares of common stock issued and outstanding, 100 of which were, as stated, given to her by her mother. Mrs. Thompson also received and thereafter retained in her own name a dividend of 10 shares of the common stock so issued.

Plaintiff married in 1931 and lived in St. Louis until 1941, at which time she and her husband moved to New York and she and her family have since continued to live in the East.

In 1935, the company's bylaws were amended and the office of chairman of the board was created, but it was specifically provided that the president should be the principal executive officer of the company. At the 1935 annual meeting of the board of directors, J. Clark Streett was elected chairman of the board and Kenneth C. Baker was elected president, positions both retained throughout the succeeding years.

In 1943, Erlbacher Brothers, a partnership consisting of Eddie Erlbacher and Robert Erlbacher of Cape Girardeau, handled most of the Oil Company's towing business. Their services, however, had become unsatisfactory and undependable, as a result of which the Oil Company, to its

---

1. The stock certificate book in evidence was made up as of March 1, 1932, following loss of the original stock certificate book, when it was sent out of the company's office to have the proper government stamps affixed to the stock certificate stubs.

continuing detriment, frequently was out of gasoline at the Cape Girardeau terminal and unable to make deliveries to its customers in accordance with its commitments.

Although there were other towing companies operating upon the river in the summer of 1943, Harper C. Patton, who had become a director and vice-president of the Oil Company in 1942, made a trip to Cape Girardeau to attempt to get the Erlbachers to improve their services to the Oil Company. He there learned that Eddie Erlbacher wanted to "get out" of the towing business, one of his reasons being that he had had an adverse ruling from the Internal Revenue Department relative to the partnership between him and his brother, which had angered him to such an extent that he decided to sell the business. During the years of working with Patton in the furtherance of the Oil Company business, Eddie Erlbacher had acquired a high regard for Patton's business ability and considered him as a close personal friend and he offered to sell Patton all of Erlbacher Brothers' towboats and barges.

Patton returned to St. Louis and advised Kenneth C. Baker of Eddie Erlbacher's desire to sell and asked Baker to "come in" with him. The two of them then telephoned J. Clark Streett, who was vacationing in Michigan, and invited him to join them. In that conversation, Baker advised Streett that Patton had an opportunity to buy the Erlbacher fleet at a comparatively small down payment, and he thought it would be an excellent thing to do. Baker told Streett that there was about a half a million dollars involved and Streett replied that he did not want to go into a partnership with that kind of liability. Streett told Baker he would have to think it over and suggested that Baker and Patton confer with Guy A. Thompson, of the firm of Thompson, Mitchell, Thompson & Young (herein sometimes referred to simply as "Thompson, Mitchell"), counsel for the Oil Company, as to the legality and feasibility of such a project.

On the following day, Baker again called Streett by telephone from Mr. Thompson's office and said that Mr. Thompson was very much opposed to their going into the deal as long as they were associated with the Oil Company; and that Mr. Thompson said he was not going to have any member of his family go into it. Mr. Thompson also talked directly to J. Clark Streett over the telephone and said to him that it was not a business that he thought "we ought to go into; we didn't have the experience and [I am] opposed to it"; that his advice to Streett was that he not "go into it"; that he, Thompson, was not going to have any of his family go into it; he felt "it was too hazardous to allow his wife and her daughter to go into the venture."

Baker and Patton advised J. Clark Streett that they had hoped they could acquire the Erlbacher business and still remain with the Oil Company, as they felt the two concerns would be advantageous to each other, but that if the Oil Company or "anybody connected with the Company" would not permit them to do so, they would leave the company. J. Clark Streett, then chairman of the board of directors, thereupon capitulated on behalf of the Oil Company; he felt he had no choice in the matter, because by this time Baker and Patton had been given full responsibility for the operation of the Oil Company and were most "vital employees"; they "had built up the business to that point. They had all the buying and selling contacts." Moreover, J. Clark Streett did not wish at his age to take on the responsibilities of a new business and finally declined to do so. He suggested that his son, Rolla, be taken in with Baker and Patton as a partner instead; and, to promote and advertise the business of the Oil Company, J. Clark Streett suggested that the name "Streett" be used by them in the new venture, thereby obtaining for the Oil Company such publicity as might be derived from use of the "Streett" name on the Towing Company's equipment plying the Mississippi River. For the same reason, J. Clark Streett suggested that

the trade name of "Zephyr", used by the Oil Company in the advertising and sale of the products marketed by it, be placed on the equipment of the Towing Company. The suggestions were accepted.

The Oil Company, acting through J. Clark Streett, Baker and Patton, thereupon sought the advice of Thompson, Mitchell as to the legal propriety of the action they wished to undertake and the manner in which it could be accomplished, and it was agreed that if Thompson, Mitchell found the project legal, they would prepare the documents necessary legally to permit Baker, Rolla Streett and Patton to remain as officers and directors of the Oil Company and to acquire the Erlbacher equipment and thereafter, as co-owners and operators of that business, to transport the products bought and sold by the Oil Company. Thereupon, Mr. Thompson and one of his partners, Richard Shewmaker, looked into legal aspects of the matter and found no impropriety in such an arrangement, provided it was carried out in the manner hereinafter stated. Under date of December 1, 1943, in a letter addressed to the Oil Company, Mr. Shewmaker enclosed a form of resolution prepared by his firm which in their opinion, when approved and signed by all of the stockholders of the Oil Company, would eliminate any question as to the propriety of the members of the partnership, doing business as Streett Towing Company, making profits out of business transactions between the partnership and the Oil Company, which letter also stated: "Even with unanimous consent of the stockholders it will, of course, still be necessary for all dealings to be fair to the corporation; we understand that such fairness can be easily shown by a comparison of rates charged by the partnership with competitive rates charged by other people." The proposed resolution enclosed in Shewmaker's letter to the Oil Company reads as follows:

"The undersigned stockholders of J. D. Streett & Company, Inc., for themselves, their executors, administrators and assigns, do hereby agree to the terms of the following resolution to be passed at the meeting of the stockholders of this corporation to be held on December ———, 1943:

"WHEREAS, Rolla W. Streett, Harper C. Patton and Kenneth C. Baker have formed a partnership under the name of 'Streett Towing Company' to engage in the business of, among other things, owning and operating river boats and barges for the transportation of petroleum products, and

"WHEREAS, it is and will be to the advantage of this corporation in the course of its business to deal and contract with said partnership from time to time,

"Now, Therefore, be it resolved that the proper officers or the directors of this corporation be, and they are hereby authorized from time to time hereafter to make such contracts and have such dealings, on behalf of this corporation, with said partnership or of any persons succeeding to its business, as they in good faith may consider to the best interests of this corporation, and that no such dealings or contracts shall be deemed in any wise improper on the part of any member of said partnership or of any person who may succeed to the business thereof, who now is or may be at any time a stockholder, officer or director of this corporation, and any and all such contracts and dealings heretofore had are hereby approved."

The law firm of Thompson, Mitchell also prepared an agreement of partnership for the new venture, known as Streett Towing Company. This instrument was executed on or about August 5, 1943, by Kenneth C. Baker, Harper C. Patton and Rolla W. Streett and provided that each of the three partners own a one-third interest in the partnership. J. Clark Streett took no part in the formation of the partnership; nor

was there any agreement or understanding that Rolla Streett held his one-third interest for the benefit of any person other than himself.

Prior, however, to completing the sale in the manner directed and found lawful by Thompson, Mitchell, the partners sought the advice of an accounting firm, which advised them of the necessity of obtaining a 100 percent certificate of necessity from the U. S. Government before they could obtain enough business reasonably to assure the operation of the towing business at a profit. Thereupon, Baker and Patton wrote the War Department a report of their activities, present and prospective, in which they stated, among other things: "We have been keeping all of the equipment in service moving petroleum products * * * for the past two years." "[A]s the equipment is vital both to our own needs and to the war effort, and as it is imperative that it be acquired under a Necessity Certificate, we ask your favorable consideration of our application." Both Baker's and Patton's letters were written in the name of Streett Towing Company. On October 5, 1943, the War Department issued to Streett Towing Company a 100 percent certificate of necessity for the purchase of the Erlbacher equipment.

The stockholders' consent agreement, as prepared for J. D. Streett & Company by counsel, was mailed by that company on J. D. Streett & Company's letterhead to all of its stockholders. Its objective was to obtain and place upon its records, prior to the acquisition of any of the Erlbacher equipment and prior to the initiation of any business dealings between the Oil Company and the Towing Company, the unanimous consent of each of the Oil Company's stockholders. The original resolution, signed by all of the holders of common stock, including Florence S. Thompson and Janet S. Franco, plaintiff herein, was returned to the Oil Company and placed in the minute book under date of December 8, 1943, where it has since remained. On that date, the common stockholders, officers and directors of the Oil Company were as follows:

| | | |
|---|---|---|
| J. Clark Streett | Chairman of Board and Treasurer | 210 shares |
| Kenneth C. Baker | President and Director | 375 " |
| Rolla W. Streett | Vice-President and Director | 120 " |
| J. Douglas Streett | Vice-President and Director | 120 " |
| Harper C. Patton | Vice-President and Director | 0 " |
| Martin Sieving | Secretary | 0 " |
| Lester L. Wright | Assistant Treasurer | 0 " |
| Janet S. Franco | | 130 " |
| William Kleissle | | 120 " |
| J. Clark Streett, Jr. | | 130 " |
| Mrs. Florence S. Thompson | | 10 " |

———◆———

After all of the stockholders had executed the aforesaid stockholder agreement, Mr. Shewmaker, a member of the Thompson, Mitchell law firm, and Baker and Patton went to Cape Girardeau to consummate the purchase of the Erlbacher equipment theretofore agreed upon. Mr. Rush Limbaugh, an attorney of Cape Girardeau, represented Eddie Erlbacher at that meeting. J. Clark Streett did not participate in the negotiations. At that meeting the Erlbachers, in order to retain certain "grandfather" privileges that inured to them to user of the river, determined to retain two of the motor vessels and some of the barges. The terms of the purchase of the remaining equipment were then agreed upon and, on January 4, 1944, Streett Towing Company acquired two motor vessels and two 9,000 barrel barges and four 12,000

barrel barges. Under these contracts, Erlbacher Brothers continued to operate their towing business with the equipment retained by them. They did, however, as a part of the purchase agreement, promise to continue to use their towboats in the transportation of the Oil Company's products and they complied with that agreement. The towing so done by them was charged to the account of Streett Towing Company; and that practice continued until the sale of the Oil Company and the Towing Company to Cities Service Oil Company.

The price agreed upon for the portion of Erlbachers' equipment purchased by the partnership was $312,000, of which $25,000 was to be paid in cash and the remainder in the form of 35 promissory notes, secured by a mortgage upon the equipment. As the sales contract was finally negotiated, the sellers were restricted to partnership assets in case of default. Baker and Patton originally intended to borrow the $25,000 from the First National Bank in St. Louis, through Mr. Walter W. Smith, President, who was "thoroughly familiar with river operations and the potential of the river", but, inasmuch as the towing charges usually paid by the Oil Company each month approximated that amount, J. Clark Streett suggested that the Oil Company advance that amount to the Towing Company, the same to be credited against the next month's towing bill, thereby obviating the necessity of the "bank financing", as had been planned by the Towing Company.

From and after January 4, 1944, the Towing Company and the Oil Company worked in close cooperation, with the former promptly supplying the bulk of the latter's transportation requirements. The transportation difficulties theretofore encountered by the Oil Company were effectively remedied; and the Oil Company, under Baker's management, enjoyed a growth and financial success from 1944 to 1954 theretofore unmatched.

In 1946, the Towing Company was incorporated and each of the three partners received one third of its 300 shares of capital stock. In 1948, Rolla W. Streett gave twenty-five shares of stock to each of his two brothers and his sister.

Throughout the history of the Towing Company, its business and affairs were managed by Baker and Patton; neither Rolla Streett nor his brothers or sister participated actively therein. Until the death of Patton in October, 1954, its board of directors consisted of Baker, Patton and Rolla W. Streett.

Initially, the Towing Company had but one office employee, a Mrs. Ferguson, who occupied desk space in the Oil Company offices. In 1947, an operations manager, R. H. Huffman, was employed by the Towing Company, which at its own expense built office facilities for him. In 1951, the Oil Company acquired a nearby building; the Towing Company paid one third of the cost of all improvements installed in the building, consisting of four private offices, two secretarial offices and a reception area, although the Towing Company occupied but one of the private offices and one of the secretary's offices. In addition, back rent of some $6,000, the sum approved by the directors of the Oil Company, was paid by the Towing Company to the Oil Company; and thereafter the Towing Company paid rent as it currently accrued for its use of these facilities. The Towing Company also paid the salaries and all office expenses concomitant with its business operation.

After January, 1944, Patton, still a director of the Oil Company, devoted a part of his time to the affairs of the Towing Company, but no more than he formerly devoted in expediting towing services with Erlbacher Brothers. Baker devoted little or no time to the Towing Company and only in a consultative way. After Streett Towing Company took over operations of the equipment purchased from Erlbacher Brothers, the billing and office routine incident to the operation of its business was at first handled by Mrs. Ferguson and later by R. H.

Huffman, who were paid by the Towing Company.

Mrs. Ferguson, called as a witness by plaintiff, identified a rate sheet she used in making billings. The rates charged to customers as shown on this sheet were, as she recalled, furnished to her by Harper C. Patton. The two companies maintained separate books and records and otherwise conducted their business and affairs as separate and independent entities.

J. Clark Streett told Baker and Patton that the rates charged by the Towing Company to the Oil Company should never be more than the regular rates charged other customers for like services. When wartime ceiling prices were in effect, the Towing Company charged the Oil Company less than ceiling prices and Kenneth C. Baker testified it was a matter of honor with the Towing Company that the Oil Company was never to be charged more than other customers of the Towing Company for the same type of services.

Plaintiff placed in evidence the testimony of two persons who qualified as experts as to the customs and factors involved in the fixing of charges for towing products, such as the products towed by Streett Towing Company for the Oil Company. It appears from their testimony that there is no standard rate by which towing charges may be determined in advance. Each towage is in effect a matter of contract and so many factors enter into the making of that contract that any chart or tabulation of charges made by towing companies with various shippers is of little value in determining the fair price for the towing of any particular shipment. Certain of the charts placed in evidence by plaintiff and used in the testimony of these witnesses tended to show that charges made by certain towing companies, including the Streett Towing Company, to shippers other than J. D. Streett & Company were less than charges made to J. D. Streett & Company for what would appear to be similar shipments. However, the trial court placed no credence

in this testimony and found as a matter of fact that the Streett Towing Company at all times gave preferred service to J. D. Streett & Company and did not overcharge the latter for such services.

The Towing Company also made it a practice of extending to the Oil Company certain preferences not furnished its other customers: (1) It permitted the accounts of the Oil Company to be handled on a 30–90 day credit basis, whereas the invoices of other companies were payable on demand. At one time, the total of the towing charges owed by the Oil Company to the Towing Company amounted to $193,000. (2) The Towing Company did not charge the Oil Company demurrage, as it did its other customers. This was an appreciable savings for the Oil Company. (3) The Towing Company, contrary to its practice with other customers, permitted the Oil Company to use its barges for "floating storage" without charge when the Oil Company bought large quantities of products in anticipation of price rises. (4) In many instances "Paul Revere runs" (i. e., operating a tow upon an emergency basis for a short trip to pick up or transport only one barge—an unprofitable task) were made for the Oil Company, but no such runs were made for other customers. (5) When the Oil Company was in need of cash, the Towing Company advanced it the amounts needed by it, charging nominal interest at the rate of one percent, thereby obviating the necessity of bank financing by the Oil Company at a much higher rate. At one time such loans made by the Towing Company to the Oil Company aggregated $200,000.

During this period of close cooperation between the two companies, the Oil Company experienced the largest annual sales and profits in its history and the dollar value of the stockholders' equity increased in proportion thereto. For instance, in 1943, the year that Streett Towing Company was organized, the book value of plaintiff's stock was $221.44 per share; in 1954, shortly before the Oil Company was

sold to Cities Service, the book value of her stock had increased to $1,457.58 per share.

The evidence further showed that from December, 1943, until the sale of the Oil Company and the Towing Company to Cities Service, Kenneth C. Baker owned 31 percent of the Oil Company stock and 33 percent of the Towing Company stock; J. Clark Streett and his family owned 48 percent of the Oil Company stock, but only 33 percent of the Towing Company stock. Consequently, there is no showing of any direct financial inducement to J. Clark Streett personally, or to his immediate family, collectively, to cause the Towing Company to be benefitted at the expense of the Oil Company.

On July 7, 1953, the number of directors of the Oil Company was increased from five to seven and Lindell Gordon, the husband of Maud Streett Gordon, and George H. Shields, III, plaintiff's brother, were elected directors.

When he became a member of the board of directors, George H. Shields, III, a graduate of Princeton, aged 50 at trial time, had had extensive experience in many business matters, in a number of which he had held important and highly responsible executive positions. Beginning in December, 1952, and at each stockholders' meeting thereafter, he held and voted the proxies of his mother and sister, plaintiff herein. In the middle 1940's, both he and his mother knew of the Streett Towing Company and knew that it was operated by Kenneth C. Baker, Harper C. Patton and Rolla W. Streett and that they owned it.

Following the December, 1953, annual meeting of the board of directors of the Oil Company, according to Rolla W. Streett, George Shields asked Rolla how the Towing Company got its start. Rolla told him that Harper C. Patton, while in Cape Girardeau, had been offered some river towing equipment by Eddie Erlbacher and that Patton had an opportunity to buy this equipment on favorable terms; that Patton brought that information back to

St. Louis to Kenneth C. Baker; that Baker and Patton wanted to form a towing company to operate towboats and barges on the inland waterways; that they invited J. Clark Streett to come in with them in the partnership arrangement; that J. Clark Streett had declined and had suggested to Baker and Patton that he, Rolla, be taken into the partnership, which invitation Rolla ultimately accepted and joined the partnership. Shields' version of that conversation was that in the middle 1940's he learned there was such a company and that following the annual meeting of the board of directors of the Oil Company in 1954 he asked Rolla Streett what the Streett Towing Company "was all about" and Rolla explained to him that it was a partnership which he, Baker and Patton had formed; that subsequently they had incorporated and that he, Rolla, voluntarily had distributed his shares therein equally between his brothers and sister.

In 1954, J. Clark Streett began an endeavor to find a buyer for the stock of the Oil Company and in the fall of 1954 Baker was approached by one John Burton to ascertain if the stock of the Oil Company and of the Towing Company was for sale. This led to negotiations between representatives of Cities Service Oil Company and Kenneth C. Baker as the representative of both the Oil Company and the Towing Company. Neither J. Clark Streett nor Rolla Streett was present. The sale price for the stock of the Oil Company was independently negotiated and agreed upon without reference to the sale price for the stock of the Towing Company. Likewise, the sale price of the Towing Company was negotiated and agreed upon independently of the sale price of the Oil Company. Thereafter, numerous meetings were held relative to the means and method of accomplishing the sale of these companies.

In January, 1955, at a meeting of the board of directors of the Oil Company, which was attended by George H. Shields, III, the board unanimously adopted a resolution recommending to the stockholders

of the Oil Company that they accept the offer finally made by Cities Service for the stock of the Oil Company, to wit: its book value, which was by all of the stockholders finally agreed upon and the sale was thus consummated in the manner following.

Under date of January 21, 1955, the plaintiff, then in New York, executed a power of attorney and forwarded it by airmail to George H. Shields, III, empowering him to act in her behalf "relative to the transaction of any business, including the sale and transfer of securities, and generally to act as my attorney-in-fact relative to such matters and on my behalf to execute all proper instruments and to do all acts and things as fully and effectually in all respects as I myself could do if personally present."

Another meeting of the interested parties was held at J. Clark Streett's home. George H. Shields, III, was again present and participated. Counsel read both the Oil Company and the Towing Company sale contracts aloud and explained them, paragraph by paragraph. A full discussion was had. The same parties again met and rehashed the matter about January 25, 1955. Finally, on February 4, 1955, following numerous informal meetings and much bargaining, both contracts were executed by all the stockholders of the respective companies, with George H. Shields, III, executing the Oil Company contract on plaintiff's behalf. By this agreement, Cities Service became obligated to pay, and did pay, to plaintiff a gross sale price of $191,-543.30, said figure representing the identical gross sales price per share as was payable thereunder to all other stockholders of the Oil Company. Of the $191,543.30 payable to plaintiff, $20,972.90 was withheld pending verification of assets, liabilities, etc. The amount so withheld was thereafter paid to and accepted by her in November, 1956, after her attorney, one Walter K. Earle, a New York lawyer, had made an investigation of the manner in which defendants had

acquired and thereafter operated Streett Towing Company.

Plaintiff testified she was 19 years of age when her father died in 1928. Her brother, George H. Shields, III, is two years younger. After her father's death, she lived with her mother. Their relations with the Streett family were very close; they had Sunday dinners together and her Streett cousins were attendants at her wedding.

Although she insisted that she never actually received any certificates of stock, nevertheless, she admitted that her mother gave to each her and her brother 100 shares of stock of J. D. Streett & Company and plaintiff thereafter received 30 additional shares, on all of which shares (130) she thereafter regularly received the dividends paid thereon; and she regularly received the usual and customary communications issued by the corporation to its stockholders. Among these were numerous documents admittedly signed by her and found in the files of the company or, in numerous instances, attached in the minute book of the company. They, on their face, show that they are directions addressed to J. Clark Streett, Kenneth C. Baker, William Kleissle, and Rolla W. Streett, either singly or in varying combinations. Generally, they consist of waivers of notice of stockholders' meetings, proxies to vote plaintiff's stock in behalf of the election of directors, authorizations to increase the capital stock, to purchase certain properties and to mortgage the same and borrow money thereon, and the like. All of these reflect that they are forms such as are in general use by corporations in the routine of their business operations. It should be noted, however, that beginning on December 18, 1952, and so long thereafter as the company existed, plaintiff struck from the proxies sent in the usual course of conduct of the Oil Company's business the names of the persons set forth in such documents, to wit: J. Clark Streett, Kenneth C. Baker and Rolla W. Streett, and, in lieu thereof,

inserted the name of her brother, George H. Shields, III, as and for her sole proxy.

Plaintiff admitted signing a power of attorney, bearing date of March 26, 1947, addressed to Hugo Monnig, a St. Louis lawyer, who represented the Oil Company in an endeavor to obtain a favorable ruling from the Internal Revenue Department with reference to the tax matters bearing upon a proposed reorganization of the company; she denied, however, receiving a copy of the letter written by Mr. Monnig as attorney-in-fact for the company to the Internal Revenue Department, which, among other things, set forth as a part of the history of the company the following: "In the early part of 1944, Messrs. Baker and Patton, together with Rolla W. Streett, organized a partnership under the name of Streett Towing Company, which owns and operates a fleet of motor-vessels and petroleum barges on the Mississippi River and its navigable tributaries. This business was incorporated on July 1, 1946, and the stock of the corporation was issued in equal shares to Messrs. Baker, Patton and Rolla W. Streett. Streett Towing Company, the control of which is owned by Messrs. Baker and Patton, operates in close co-operation with J. D. Streett & Company, Inc., and transports a major proportion of the products handled by the latter company. It is largely because of this co-operative effort that the annual sales of J. D. Streett and Company, Inc., have increased by approximately $4,000,-000.00 since 1944. It is necessary that this co-operation be continued if the sales of the company are to be maintained." Plaintiff also admitted that she with her mother signed a power of attorney dated May 26, 1947, which gave their power of attorney to J. Clark Streett authorizing him in their behalf to sell, assign, exchange and transfer all or any part of the shares of capital stock of the company owned by them in carrying out the proposed plan of reorganization of the company. (This reorganization was never effected and plaintiff says she has no memory of having signed the power of attorney.)

Plaintiff also admitted signing the stub in the stock certificate book which recites the receipt by her of the certificate No. 16 for 30 shares of the common stock of the company, but, as stated, denied she ever received the certificate.

Plaintiff testified she signed everything J. Clark Streett asked her to sign. She admitted receiving from the company the annual financial statements issued by it for the years 1941, 1942, 1943 and 1944. These statements give in detail the receipts, disbursements and activities of the company.

Plaintiff said that the proxies given by her to J. Clark Streett and the other instruments signed at his request were executed without question or independent advice and because of the confidence and reliance she had in him and Rolla W. Streett, J. Douglas Streett and Kenneth C. Baker, but admitted that her uncle, J. Clark Streett, never talked to her about the affairs of the company while she lived in St. Louis. He occasionally added a personal note to the communications sent her by the Oil Company after she went East to live. She never in her life discussed the affairs of the company with Rolla W. Streett or J. Douglas Streett. She could recall only two communications she had with her uncle: In 1946, while in St. Louis awaiting the birth of her youngest child, she asked J. Clark Streett if it would be possible for her to sell her stock in the company as she and her husband were contemplating buying a home in Crestwood, New York. Her uncle told her there was no open market for the stock, that he could give her only a very small amount for it, and he advised her to hold on to it, which she did. On the other occasion she had received notice of an annual dividend, which was to be paid quarterly. She thereupon asked J. Clark Streett if she could elect to take all of the dividend at one time, to which he agreed, and it was so paid to her. And she also admitted that she never had any communi-

cations with any of the officers or directors other than J. Clark Streett (and her brother) and that she never at any time advised any of them that she was looking to them for advice and counsel concerning corporate matters.

She also admitted on cross-examination that she, along with all of the other stockholders of the Oil Company, received (by mail), signed and returned by mail the resolution, which is found in the minute book, as prepared by Mr. Shewmaker and bearing date of December 8, 1943, which authorized the formation of the partnership of Streett Towing Company by Harper C. Patton, Kenneth C. Baker and Rolla W. Streett, all of whom, admittedly, she knew to be stockholders of the Oil Company; and that she received the annual report dated November 30, 1944, which among many other items contained a heading entitled "Other Income", beneath which appeared the following recital: "Consists of rental returns from two company owned barges used by Streett Towing Company, $17,808.-42, interest, $716.70, * * *."

Walter K. Earle, an attorney at law residing in New York, also testified in behalf of plaintiff: He is a graduate of Harvard Law School and was admitted to the bar in 1913. In April, 1955, (after the sales contract had been signed but before plaintiff had received the balance of the purchase price withheld from her in accordance with the provisions of the contract) he was employed by her to examine certain of her papers and to advise her as to what course of action he thought she might best take. She did not have sufficient facts to be of much assistance to him and he communicated with Mr. Edwin M. Johnston of the firm of Armstrong, Teasdale, Roos, Kramer and Vaughan, present counsel for defendants. Thereafter, Mr. Earle came to St. Louis and conferred with Mr. Johnston, of said law firm, and with Mr. Kenneth C. Baker. Mr. Earle asked Baker for the story of the company, which was supplied him by Mr. Baker and Mr. Johnston. In detailing the history of J. D. Streett &

Company, Mr. Earle learned the manner in which Streett Towing Company was created, the names of the original partners therein, the subsequent incorporation of that company and the connection of the owners of the stock in Streett Towing Company with J. D. Streett & Company. Mr. Earle's notes taken at that time showed that the information given him was that the deal originally negotiated with Erlbacher Towing Company for the purchase of the barges and tugs was to amount to $475,000, but that because of several vessels being thereafter eliminated from the deal the purchase price was $287,000, which, as he understood, was to be paid by personal individual promissory notes of Harper C. Patton, Kenneth C. Baker and Rolla W. Streett. His notes did not reflect and he was certain that he received no information concerning the $25,000 in cash advanced by the Oil Company in addition to the series of notes for the total sum of $287,000.

Mr. Johnston's version of this conference was that no inquiry was made as to whether a down payment was made and that Mr. Earle was given all the information he asked for.

The trial court made 54 detailed findings of fact and rendered 23 conclusions of law. These extend through 38 pages of the transcript. They need not be set forth *in extenso*. It will suffice to summarize the substance of them, which is to this effect: That the plaintiff is and was at all times herein material a mature, intelligent, college-educated woman; that she never at any time, either prior to or after acquisition of her stock in the Oil Company, placed or reposed any special trust, confidence or reliance in either J. Clark Streett, Rolla W. Streett, J. Douglas Streett, or any other officer or director of the Oil Company (other than her brother, George) with respect to any matters in issue; that from 1953 until the sale of both the Oil Company and the Towing Company to Cities Service on February 4, 1955, she did place special trust and confidence in her brother, George H. Shields,

III, and authorized him, by formally executed power of attorney, to act for and in her behalf in the sale of the Oil Company to Cities Service; that he did so act in her behalf with full knowledge of the manner in which the Towing Company acquired and thereafter operated the Erlbacher equipment and plaintiff is legally and equitably bound by the action so taken by him in her behalf; that when plaintiff received and executed the 1943 stockholders' consent to the formation and operation of Streett Towing Company by the therein named officers of the Oil Company, she understood the nature and purport of that document and, acting upon her own judgment, agreed to its provisions; that because of the position taken by Mr. Thompson, when his advice was sought by J. Clark Streett, Baker and Patton, and his firm opposition to the investment of any of the Oil Company's funds in the towing equipment and, especially, his flat refusal to "permit" any member of his family to invest any funds therein, internal warfare between the shareholders almost certainly would have resulted if J. Clark Streett, Baker and Patton had undertaken to purchase and operate the Erlbacher towing equipment as an asset of the Oil Company; that the purchase and operation of said property by Baker, Patton and Rolla W. Streett as an independent enterprise was accordingly agreed upon and consummated openly and in the manner approved by Mr. Thompson, who, as the record tends strongly to show, then was also a trusted advisor and confidant of plaintiff and her brother and their mother; that the subsequent operation of the Erlbacher equipment by Baker, Patton and (nominally) Rolla W. Strett, who were also officers or directors of the Oil Company, resulted in remarkably lucrative returns to the Oil Company and comparable profit to its shareholders; that from the date of the purchase of the Erlbacher equipment to the date of the sale of the two companies to Cities Service in February, 1955, the business dealings between the companies were consistently fair to the Oil Company and that there was no convincing evidence that the Towing Company discriminated or took unfair advantage of the Oil Company in any manner whatsoever; that the $25,-000 in cash, representing approximately one month's towing charges, advanced by the Oil Company to the Towing Company for the initial down payment, was a mere act of good will on the part of the Oil Company to obviate the necessity of the Towing Company borrowing money from the bank; that it was not unusual for the Oil Company to extend credit in its business dealings; and that there was nothing of sinister import in the advancement so made to the Towing Company in this instance.

On this appeal, plaintiff contends that the trial court erred "(1) in dismissing the amended petition as to Kenneth C. Baker, the executrix and distributees under the will of Harper C. Patton, Maud Streett Gordon, and J. D. Streett & Company, and (2) in concluding as a matter of law that plaintiff had to establish a special fiduciary relation, respecting her interest in the company as to any defendant she sought relief against", on grounds:

"(A) The petition states a good claim against J. Clark Streett, Rolla W. Streett, J. Douglas Streett, Kenneth C. Baker, and the representatives of Harper C. Patton because it alleges that while plaintiff was a shareholder in J. D. Streett, a corporation of which the five named were officers and directors, Baker, Patton and Rolla W. Streett, together and in conspiracy with the other corporate officers and directors, misappropriated a business opportunity of the corporation and nurtured the same with funds, facilities, and personnel of the corporation to the sole benefit and profit of the conspirators, and that the conspirators then negotiated at one time a sale of all stock in the corporation (J. D. Streett), including plaintiff's and in the misappropriated business opportunity (Streett Towing), which was consummated before plaintiff acquired any knowledge of the wrongdoing.

"(B) The petition also states a good claim against Baker and the representatives of Harper C. Patton because, in addition to the facts set out in (A) above, it alleges that J. Clark Streett, Rolla W. Streett, and J. Douglas Streett stood in a special fiduciary and confidential relation to plaintiff with respect to plaintiff's interest in J. D. Streett, that Baker and Patton conspired with the Streetts to take advantage of this relation to misappropriate corporate assets and facilities and to keep plaintiff ignorant of said misappropriation, and that the conspiracy did in fact keep plaintiff ignorant until after a sale of all stock in J. D. Streett and Streett Towing Co. had been made.

"(C) The petition stated a good claim against the representatives of Harper C. Patton and against Maud Streett Gordon because of the allegations stated in (A) and (B) above, the allegation that Mrs. Gordon acquired stock in Streett Towing Co. by gift from one of the Streett conspirators, and the allegation of receipt by Mrs. Gordon and the Patton representatives of dividends upon the stock of Streett Towing Co. and of the proceeds of sale of Streett Towing Co. stock.

"(D) J. D. Streett was a proper party defendant for the reason that plaintiff was entitled to an adjudication that J. D. Streett was not entitled to share in the proceeds of sale of Streett Towing Co."

On the other hand, defendants contend:

"I. The trial court correctly ruled that Janet Franco could not recover in her own right and for her personal benefit her pro rata share of damages allegedly sustained by the Oil Company as a result of the alleged appropriation by certain of its officers and directors of a corporate opportunity.

"II. Plaintiff failed to prove either the existence or breach of any special

or confidential relationship between herself, individually, and either J. Clark Streett, Rolla W. Streett, or J. Douglas Streett.

"III. Whether the claim be called breach of a special, confidential or fiduciary duty, or fraud and deceit, it is fatally defective in that there is neither pleading nor proof that Janet Franco would not have executed the 1943 stockholder consent had she known that it was the Erlbacher equipment which was being acquired, etc.

"IV. Even if Janet Franco had legal capacity to seek her pro rata share of a claim resulting from misappropriation of a corporate opportunity, she is foreclosed here, as there was no opportunity which the corporation would, or legally could, have taken."

Both parties have cited many authorities and both have favored us with extended and most able arguments in support of their respective contentions; and we have given them extended consideration.

■ This being an action in equity, it is the duty of this court to review the entire record upon both the law and the evidence and reach its own conclusions as to the facts, giving due deference to the finding of the trial chancellor. Cleary v. Cleary, Mo., 273 S.W.2d 340, 346; Rosenbloom v. Grossman, Mo., 351 S.W.2d 735, 736; Cruwell v. Vaughn, Mo., 353 S.W.2d 616, 624.

The conclusions we have reached, predicated upon the facts as we have determined them to be, make it unnecessary to undertake to analyze and resolve the numerous contentions made by plaintiff with reference to the sufficiency of her pleadings and the alleged error of the court in sustaining the motion to dismiss the petition as to all the defendants other than as to defendants J. Clark Streett, Rolla W. Streett and J. Douglas Streett, against whom the court found the petition had pleaded facts which, had they been proved, were sufficient to support a finding of special confidential rela-

tionship between plaintiff and said defendants.

■ We have carefully reviewed the evidence in all of its aspects, as did the trial court, and have come to the conclusion that there is not sufficient cogent and convincing evidence upon which to base a reasoned finding: (1) that the defendants, or any one or number of them, conspired to or in fact did misappropriate a business opportunity afforded J. D. Streett & Company; or (2) that they thereafter unlawfully or wrongfully nurtured the same with funds, facilities and personnel of the Oil Company for the special profit and benefit of any one or more of them; or (3) that the defendants, or any one or more of them, unlawfully or wrongfully negotiated a sale of the stock of J. D. Streett & Company, including plaintiff's stock therein, in violation of any lawful or equitable right vested in plaintiff as a former stockholder in said company; or (4) that plaintiff failed to exercise her own free will and independent judgment in any and all things done or actions taken by her in connection with the matters here in issue; or (5) that she acquiesced in the purchase and operation of the Erlbacher equipment by reason of any special trust or confidence reposed in either J. Clark Streett, Rolla W. Streett or J. Douglas Streett; or (6) that she was not furnished with full information as to the relationship and course of dealing between the Oil Company and the Towing Company.

Plaintiff also contends that the court erred in excluding evidence proffered by plaintiff to show that plaintiff's mother and brother permitted J. Clark Streett to manage their interests without question or accounting. Assuming the evidence so proffered, which we have studied at length, would be competent for the purpose of showing a course of family conduct and, to the extent believed, it would tend to substantiate plaintiff's contention that she reposed special trust and confidence in J. Clark Streett, we have concluded that it would not be of sufficient probative force to overweigh the findings we have made that none of the parties defendant was motivated by any actual or constructively fraudulent intent. To the contrary, we believe and find that, acting upon the advice of able counsel and in compliance with their responsibilities as officers and directors, under the circumstances here shown, they in good faith diligently sought to promote the best interest and welfare of the Oil Company and each of its shareholders; and that the evidence fails to establish any ground upon which plaintiff is entitled to the relief sought.

The judgment should be and is affirmed.

All concur.